UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IVAN LOZANO RAMIREZ,

        Petitioner,

    v.

WARDEN MATTHEW MORDANT,
GARRETT RIPA, ACTING
DIRECTOR TODD LYONS,
SECRETARY KRISTI NOEM,
ATTORNEY GENERAL PAMELA
BONDI,

        Respondents.

Case No. 2:26-cv-549-KCD-NPM

        /

### ORDER

Petitioner Ivan Lozano Ramirez is a Cuban citizen who is subject to a final order of removal. (Doc. 1 ¶ 26.)[1] He was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his immigration custody.

The background of the dispute is relatively straightforward. Ramirez entered the United States in 1987 and was paroled. He remained in the country for seven years until a conviction for cocaine trafficking brought him into custody. (Doc. 8-1 at 3.) After an immigration judge ordered him removed

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

in 2000, ICE released him on an "Order of Supervision," which is essentially a form of immigration parole where he checked in with the government but otherwise lived his life. (*Id.* at 3, 12-15.) Then, in January 2026, ICE revoked his release and arrested him. To justify the decision, the agency cited his conviction of an aggravated felony. (*Id.* at 21.) ICE also served him a notice of removal to Mexico. (*Id.* at 18.)

Ramirez now challenges his sudden re-detention. He argues it is unlawful on three fronts. First, he raises a substantive due process claim, claiming his removal is not reasonably foreseeable under the Supreme Court's framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 9.) Second, he presses a procedural due process challenge, claiming the Government stripped him of his liberty without affording him adequate notice or an opportunity to be heard. (*Id.* at 11.) Finally, he alleges ICE flouted its own binding regulations—specifically 8 C.F.R. §§ 241.4 and 241.13—by denying him a prompt informal interview and by allowing an unauthorized official to execute the revocation notice. (*Id.* at 9, 12-13.)

The Government, predictably, sees things differently. At the threshold, it argues that 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip this Court of jurisdiction. (Doc. 8 at 3-4.) Should we reach the merits, the Government maintains the detention is fully authorized—indeed, mandated—by 8 U.S.C.

§ 1231. In its view, Ramirez's *Zadvydas* claim is premature because he has not been detained long enough. (*Id.* at 7.)

The Government's jurisdictional argument stretches the statutory text too far. But while the Court can hear the case, Ramirez's substantive challenge to his detention under *Zadvydas* falls short. That claim is simply premature under the established six-month benchmark. His procedural claims, by contrast, hit their mark. Ramirez was apparently never provided an interview or any real chance to respond to the reasons for his re-detention. Because the right to be heard in a meaningful manner is a fundamental requirement of due process, more process is constitutionally required here. Ramirez's petition is thus **GRANTED IN PART AND DENIED IN PART** as set forth below.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration

detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Court starts, as it must, with the threshold issue of jurisdiction. As mentioned, the Government claims that a provision in the Immigration and Nationality Act—8 U.S.C. § 1252(g)—strips district courts of authority to hear claims arising from the execution of removal orders. Because Ramirez was detained to carry out his final removal order, the argument goes, his habeas petition is merely an impermissible attempt to challenge that ongoing legal process. (Doc. 8 at 3.)

Even if this argument was legally sound (which it isn't), there is a more fundamental problem: the Government's jurisdictional theory doesn't match its own actions. While it now claims that Ramirez is being held solely to execute his removal, the notice issued at the time of his arrest says something else entirely. That notice cited Ramirez's conviction "of a crime designated as an aggravated felony." (Doc. 8-1 at 21.) So on the current record, the Government is essentially asking the Court to ignore its own contemporaneous explanation in favor of a convenient litigation label. The Government cannot claim Ramirez was detained to execute a removal order when its own paperwork identifies a discretionary revocation for alleged rule-breaking as the true basis for the arrest.

4

In the end, this shell game is beside the point. Even if we take the Government's litigation position at face value—treating Ramirez's detention as the literal "execution" of a removal order—the jurisdictional argument still falls flat. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at *1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

But § 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Ramiez's petition steers clear of those forbidden actions. He is not asking this Court to vacate his removal order or to stop the Government from putting him on a plane. Instead, he is challenging the substantive and procedural mechanics of his current detention. His argument is that the Government failed to follow its own rulebook when it revoked his release. (*See* Doc. 1 ¶ 47.) A claim that the Government locked someone up in violation of binding regulations is a challenge to the process of detention, not a challenge to the commencement or execution of a removal order. *See, e.g.*, *Navarro v. Bondi*, No. 8:25-CV-3213-KKM-NHA, 2025 WL 3275944, at *2 (M.D. Fla. Nov. 25, 2025).

The core of this case is not about the Attorney General's decision to detain Ramirez. It's about whether the Government followed the law and its own regulations in that process. (*See* Doc. 1.) Such a claim is best understood as independent of, and collateral to, removal because it may be resolved without affecting the Attorney General's prosecutorial discretion that § 1252(g) was meant to preserve. *See Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); *see also Arroyo v. Diaz*, No. 25-62676-CIV, 2026 WL 279656, at *4 (S.D. Fla. Feb. 2, 2026); *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026).

What is more, if the Government's reading were correct, § 1252(g) would act as a jurisdictional black hole for anyone held in immigration custody. Under its theory, so long as the executive branch points to a final removal order, it could hold a noncitizen indefinitely, ignore its own regulations, or subject the detainee to unconstitutional conditions, all while insisting that federal courts are powerless to intervene. The Supreme Court has never read § 1252(g) so broadly. *Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *See also Arroyo*, 2026 WL 279656, at *4; *Banega*, 2026 WL 234042, at *2.

Next up is the so-called "zipper clause," which "bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting 8 U.S.C. § 1252(b)(9)). This discussion can be short. The Eleventh Circuit has held "that the zipper clause only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Ramirez is not challenging a removal order. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

With the jurisdictional underbrush cleared away, the Court turns to the merits. Ramirez mounts a multi-pronged attack, bringing a mix of substantive and procedural challenges to his renewed confinement. As it turns out, while his broader theories regarding the length of his detention falter, his procedural due process claim has teeth. Ramirez's claims are addressed in turn.

**Count I—Substantive Due Process**

Invoking the Fifth Amendment, Ramirez first claims that his continued detention serves no legitimate, non-punitive immigration purpose. And locking a person up indefinitely without a valid plan for removal, like alleged here, is exactly the kind of arbitrary deprivation of liberty that the Constitution forbids. (Doc. 1 at 10-11.)

The Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would

8

be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Ramirez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules,

9

ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Ramirez has an outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective—effectuating that removal.

Nor are we anywhere near the constitutional danger zone. ICE re-detained Ramirez on January 5, 2026. He has been in custody for nearly three months. That is a far cry from the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls well within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Ramirez claims that his removal is not likely in the foreseeable future. (Doc. 1 ¶ 39.) This argument puts the cart before the horse. Until the six-

10

month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Ramirez remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the statutory authority to hold him while it works to put him on a plane.

### Count II—Procedural Due Process

The Fifth Amendment prohibits deprivation of an individual's life, liberty, or property without due process of law. U.S. CONST. amend. V.

11

"[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

The first step is easy here. Once ICE unlocked the doors and placed Ramirez on supervised release, he acquired a conditional liberty interest that triggered constitutional protection before it could be taken away. *See Young v. Harper*, 520 U.S. 143, 147-48 (1997). This is true even when the released individual is subject to extensive conditions of release. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *11 (M.D. La. Feb. 6, 2026) ("[N]on-citizens have an overwhelming liberty interest in their continued release under [an] Order of Supervision . . . that may not be removed without due process."); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects.").

12

That takes us to the second step: determining exactly what process is due. At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

From the record now before the Court, the opportunity to be heard is entirely missing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (describing the opportunity to present reasons why proposed action should not be taken as a "fundamental due process requirement"). The Government's response is notable for what it leaves out. It points to no hearing, no informal interview, and no immediate forum where Ramirez could contest his sudden detention. (Doc. 8.) Taking a person's liberty and then making them sit in jail for months before even glancing at their paperwork flips the constitutional baseline on its head. Even ICE's own rulebook recognizes that taking away a person's conditional liberty requires far more procedural rigor than a silent, unilateral fiat. *See, e.g.*, 8 C.F.R. §§ 241.4(l), 241.13(i).

13

Due process is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To be sure, Ramirez is a noncitizen subject to a final removal order, meaning he does not possess the full panoply of rights enjoyed by a citizen. But even with that caveat, the Constitution demands more than what has been offered here. While ICE's regulations do provide for a file review within several months after supervision is revoked, *see* 8 C.F.R. § 241.4, that is not sufficient. As other courts have recognized, a belated review, held more than three months after the jail cell door slams shut, is simply too little, too late to protect the core liberty interest at stake. *See Grigorian*, 2025 WL 2604573, at *9; *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("We have said that the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error[.]").

Ramirez has proven a constitutional violation—the government cut corners and denied him the process he was due. But winning on a procedural claim is one thing; getting the remedy he wants is another.

Ramirez seeks immediate release from custody. (Doc. 1 at 13.) That is a bridge too far. Habeas corpus is, at its core, governed by equitable principles. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And equity counsels against the drastic remedy of immediate release here for a couple of reasons. *Id.* ("The

14

question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.").

First, the natural remedy for a procedural shortcoming is a procedural fix. When an agency skips a step in its own rulebook, the typical judicial response is to force the agency to go back and do its job right—not to throw open the jailhouse doors. *See, e.g.*, *Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at \*7 (S.D. Ga. Jan. 29, 2020) ("Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry."). The specific injury Ramirez claims here is the deprivation of an informal interview under §§ § 241.4(l) and 241.13(i). The logical cure, therefore, is to order exactly that. Granting a substantive windfall like immediate release for a purely procedural error overreaches. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 663-64 (N.D. Tex. 2025) ("The Supreme Court [has] made clear that error regarding one's confinement does not mean that release is the appropriate remedy.").

Second, the writ of habeas corpus is fundamentally forward-looking. It asks whether a petitioner's confinement is lawful today and whether it can lawfully continue tomorrow. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test

the legality of the prisoner's current detention."). A straightforward fix can easily restore Ramirez's detention into constitutional compliance. Until ICE proves unwilling or unable to provide the process its regulations require, tearing up the detention order is simply premature. In the Court's view, the proper move is to hold the agency to its own rules, test whether it can cure the defect, and reserve the drastic remedy of release for a true failure to comply. To that end, the Government must provide the required interview under 8 C.F.R. § 241.13(i)(3)[2] by April 9, 2026.

**Counts III—The *Accardi* Doctrine**

Ramirez does not rest on the Constitution alone. He also invokes the *Accardi* doctrine—a fancy name for the simple, common-sense rule that an agency has to follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Count III essentially sings the same tune as above: ICE skipped the procedural steps required by its own rules before revoking his liberty. Specifically, Ramirez contends the Government took a shortcut by failing to provide a prompt informal interview and by letting an unauthorized official sign the revocation notice. Because these claims are cut from the same cloth, the Court addresses them together.

---

[2] Because the Government previously released Ramirez after determining that there was no significant likelihood of his removal (Doc. 8-1 at 14), the regulation governing his return to custody here is 8 C.F.R. § 241.13(i). More on this below.

16

"[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). And it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Ramirez's first grievance takes aim at a signature—or rather, the person who authorized his detention. (Doc. 1 ¶ 62.) Ramirez cites 8 C.F.R. § 241.4(l)(2) to conclude that only certain high-ranking officials are allowed to order the revocation of a non-citizen's supervised release. (*Id.* ¶ 41); *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area."). But there is a foundational problem with this argument: Ramirez is reading the wrong regulation.

While § 241.4 generally applies to aliens detained pending removal, like Ramirez, its "custody review procedures . . . do not apply after the Service has made a determination . . . that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4). In those circumstances, 8 C.F.R. §

17

241.13 supplies the framework for re-detention. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at \*3 (W.D. Ky. Feb. 6, 2026).

The only way to read the record here is that Ramirez falls into the latter camp. Look at the order of supervision itself. It does not reflect a discretionary, case-by-case decision to release him under § 241.4(e). Instead, the order explicitly rests on ICE's inability to execute his removal—the precise trigger for a release under § 241.13. Because his initial release was seemingly governed by § 241.13, the mechanics of his revocation are covered by that same provision. Section 241.4 simply has no role to play here. *See Choy*, 2026 WL 324601, at \*3.

Here is the catch: unlike its counterpart, § 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials. It simply says the agency can revoke an order of supervision if there is a violation of the conditions of release. Ramirez is trying to borrow a procedural hurdle from a completely different regulation and wedge it into his case. But a petitioner cannot mix and match regulatory provisions to manufacture an *Accardi* violation. *Cf. Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation.").

18

That brings us to the other prong of Ramirez's *Accardi* challenge: the missing interview. Under the governing regulation, ICE is required to conduct an "informal interview" promptly after a noncitizen is returned to custody. 8 C.F.R. § 241.13(i)(3). The purpose of this requirement is straightforward—it provides a meaningful opportunity for the individual to respond to the reasons for their re-detention. *Kem v. Noem*, No. 3:25CV997 DRL-SJF, 2026 WL 100566, at *4 (N.D. Ind. Jan. 14, 2026). The Government does not point to a date, a location, or even a stray note in a file suggesting that Ramirez was given a chance to speak. (*See* Doc. 8.) When the Government skips a mandatory procedural safeguard meant "to confer a procedural benefit to a class to which complainant belongs," that complete regulatory bypass renders the action "invalid[.]" *Port of Jacksonville Mar. Ad Hoc Comm., Inc. v. U.S. Coast Guard*, 788 F.2d 705, 708 (11th Cir. 1986).

That violation, however, leads to the same remedial dead-end as Ramirez's constitutional due process claim. When an agency fails to hold a required interview under its own regulations, the usual judicial response is to order the interview—not to hand the petitioner a get-out-of-jail-free card. *See, e.g.*, *Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at *7 (S.D. Ga. Jan. 29, 2020). A procedural foul typically calls for a procedural fix. And for the same equitable and practical reasons already discussed, the Court will

19

not order Ramirez's immediate release. Instead, the Government must do exactly what its regulations demand: provide the interview he is due.

### III. Conclusion

The Government violated both the Constitution and the *Accardi* doctrine when it canceled Ramirez's supervision without providing him an opportunity to be heard. But winning on procedure does not entitle him to the substantive windfall of immediate release. Rather, the appropriate remedy is to require the Government to do its job and provide the process due. Accordingly:

1. Ramirez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART**.

2. To the extent Ramirez seeks immediate release from ICE custody, the petition is **DENIED**.

3. To the extent Ramirez seeks a procedural remedy for the revocation of his supervised release, the petition is **GRANTED**.

4. Respondents are **ORDERED** to provide Ramirez with the informal interview required by 8 C.F.R. § 241.13(i)(3) by **April 9, 2026**. If that procedure is not provided by the Court's deadline, Respondents are directed to release Ramirez.

5. The Clerk is directed to enter judgment accordingly and close the case. The Court will retain jurisdiction to enforce this Order.

**ORDERED** in Fort Myers, Florida on March 30, 2026.

Kyle C. Dudek
United States District Judge